# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

DAVID LAWRENCE HODGES,               Case No. 21-cv-165 (MJD/ECW)

                    Petitioner,

v.                                   **REPORT AND RECOMMENDATION**

WILLIAM BOLIN, WARDEN, MOOSE
LAKE CORRECTIONAL FACILITY,
MINNESOTA,

                    Respondent.

---

This matter is before the undersigned United States Magistrate Judge on Petitioner David L. Hodges' Petition for a Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254 (Dkt. 1)[1] and Respondent William Bolin's Motion to Dismiss (Dkt. 10).  This case has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons set forth below, this Court recommends that the Petition for Writ of Habeas Corpus (Dkt. 1) be dismissed with prejudice and Respondent's Motion to Dismiss be granted.

---

[1]      Unless stated otherwise, references to page citations refer to the CM/ECF pagination.

# I.     BACKGROUND

**A.     State Court Post-Conviction Relief**

This matter's relevant procedural history is well-summarized by the Minnesota

Court of Appeals' decision in Hodges' post-conviction relief appeal:

> On August 6, 2010, Ramsey County charged Hodges with first-degree criminal sexual conduct under Minn. Stat. § 609.342, subd. 1(e)(1) (2008). As a result of this investigation, on October 5, 2010, Hennepin County charged Hodges with first-degree criminal sexual conduct on a separate case. On April 25, 2011, Hodges entered into a plea agreement where he would plead guilty to first-degree criminal sexual conduct in both counties, settling both cases. The parties agreed to the presumed sentencing range for a person with a criminal-history score of five—between 260 and 306 months.

> On April 25, 2011, Hodges pleaded guilty to first-degree criminal sexual conduct in Ramsey County. The district court found that Hodges knowingly and voluntarily waived his rights and found the factual basis for the guilty plea to be sufficient. The district court did not accept the guilty plea at that hearing. On May 6, 2011, Hodges pleaded guilty to first-degree criminal sexual conduct in Hennepin County and was sentenced to 156 months in prison.

> On August 3, 2011, Hodges appeared in Ramsey County for sentencing. The district court asked if there were any corrections that needed to be made to the presentence investigation report (PSI) and informed the parties that it had also reviewed the addendum to the PSI. The PSI that the Ramsey County District Court reviewed before sentencing Hodges revealed that he had a criminal-history score of four. The applicable guidelines sentence for a person with a criminal-history score of four was 199-281 months' imprisonment. Concerning the PSI, the state noted for the court that it had "double or triple checked on the custody status point with Corrections," and that there was not a "custody status point, as we had hoped at the time of the plea." The state explained that the parties "agreed that we would be arguing within a range of 260 to 306 months," and with the corrected criminal-history score "the top of the box for this offense is 281 months, which is within the range that we anticipated." The state recommended that the district court sentence Hodges to 281 months in prison, which was a top-of-the-box sentence. The state argued this was appropriate because of "the nature of the [victim's] injuries," the particular cruelty with which Hodges treated the victim, and because Hodges continued to deny responsibility for the offense.

Hodges's counsel asked the court to accept Hodges's guilty plea and asked the court to sentence Hodges "within the range that we've agreed, which is 260 to the top of the box." The district court accepted Hodges's guilty plea and sentenced him to 281 months in prison to be served concurrently with his Hennepin County sentence.

(Dkt. 1-1 at 8-10; *Hodges v. State*, No. A19-2003, 2020 WL 4932790, at *1 (Minn. Ct. App. Aug. 24, 2020), *rev. denied* (Nov. 17, 2020) (footnotes omitted).

Later, it was determined that the 2009 Sentencing Guidelines Grid, used to determine Hodges's presumptive sentencing range, was incorrect. (Dkt. 1-1 at 10 n.2; *Hodges*, 2020 WL 4932790, at *1 n.2.) Under the corrected 2009 Sentencing Guidelines Grid, the maximum sentence to which Hodges could be sentenced was 280 months, and his sentence was amended to 280 months on March 27, 2012.

(Dkt. 1-1 at 10 n.2; *Hodges*, 2020 WL 4932790, at *1 n.2.)

The Minnesota Court of Appeals further explained:

Hodges did not appeal from his conviction. Two years later, on August 5, 2013, Hodges filed his first postconviction petition seeking to withdraw his guilty plea or amend his sentence. Hodges argued, among other things, that his guilty plea was invalid because of a mutual mistake about his criminal-history score. The district court denied Hodges's petition for postconviction relief, and it found that Hodges's "sentence was within the agreement he originally reached with the state." On appeal, we affirmed the denial of Hodges's petition for postconviction relief, explaining that the mutual mistake about Hodges's criminal-history score "did not render [his] plea unintelligent where the actual range was lower than the anticipated range and the resulting sentence was within the anticipated range." *Hodges v. State*, No. A13-2207, 2014 WL 3558335, at *4 (Minn. App. July 21, 2014), *review denied* (Minn. Sept. 24, 2014).

On August 20, 2019, Hodges filed a motion to correct his sentence or, in the alternative, for postconviction relief. Hodges argued that his sentence was illegal because "[i]t was calculated based on an incorrect criminal[-]history score." Hodges also argued "that he be allowed to withdraw his plea to avoid a manifest injustice due to receiving the ineffective assistance during plea

bargaining." Hodges made additional arguments, including that his motion should not be treated as a petition for postconviction relief, that he should not be precluded from obtaining relief, that his motion is not procedurally barred, and that his motion is not time-barred.

On October 17, 2019, the district court denied Hodges's motion. The district court rejected his illegal sentence and plea withdrawal arguments stating, "In this case the court sentenced [Hodges] to a presumptive sentence based on the correct criminal[-]history score range and the applicable guidelines sentence." The district court also rejected Hodges's remaining arguments as procedurally barred or time-barred under *State v. Knaffla*, 243 N.W.2d 737 (Minn. 1976).

(Dkt. 1-1 at 10-11; *Hodges*, 2020 WL 4932790, at *2 (footnote omitted).)

The Minnesota Court of Appeals also noted:

Hodges has since filed two petitions for postconviction relief, one motion to modify his sentence, one motion to reconsider the denial of a postconviction petition, and one motion to correct his sentence or, in the alternative, withdraw his guilty plea. The district court has denied all of his filings. In its August 25, 2016 order, the district court stated that it "will not entertain and the clerks will not accept any further motion[s] to resentence or motions to readdress the sentence[s] that are based on the current sentence being illegal or unauthorized by law or outside the plea agreement." Hodges has since undertaken two additional appeals. The first, in February 2016, was dismissed after Hodges filed a motion to withdraw and dismiss the appeal. The second, in October 2016, was dismissed because Hodges was attempting to appeal from a non-appealable order.

(Dkt. 1-1 at 10 n.3; *Hodges*, 2020 WL 4932790, at *2 n.3)

On August 24, 2020, the Minnesota Court of Appeals affirmed the district court's October 17, 2019 denial of Hodges' August 20, 2019 motion to correct his sentence or, in the alternative, for postconviction relief. (Dkt. 1-1 at 11-17.)

**B.    Proceedings in this Court**

Hodges filed the present Petition with this Court on January 22, 2021. (Dkt. 1.) Hodges asserts two grounds as the basis for this habeas corpus proceeding: (1) he should

4

be allowed to either withdraw his plea or be resentenced because his plea was based on an incorrect criminal history point; and (2) he received ineffective assistance of counsel in violation of his rights under the Sixth Amendment of the United States Constitution. (*Id.* ¶ 13.)  Hodges acknowledges in the Petition that his judgment of conviction became final over one year ago under 28 U.S.C. § 2244 but contends that his Petition relies upon United States Supreme Court cases, *Molina-Martinez v. United States*, U.S. 136 S. Ct. 1338 (2016) and *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1903 (2018), which were not available to him prior to 2018 pursuant to § 2244(d)(1)(C), and  that "there is cause and prejudice to excuse any time or procedural bars that may be applicable."  (*Id.* ¶ 19.)

After the Court ordered Respondent to file a response to the Petition, Respondent filed the Motion to Dismiss and supporting memorandum on March 30, 2021.  (*See* Dkts. 3, 10, 11.)  The Petition is therefore fully briefed and ready for the Court's consideration.

## C.    **Motion to Dismiss**

Respondent seeks dismissal with prejudice of the Petition based on three overarching grounds.  First, Respondent argues that the Petition is untimely because it was not filed within the one-year statutory limitation pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  (Dkt. 11 at 4.)  In that regard, Respondent contends that one year, nine months, and four days passed from the expiration of time that Hodges was required to seek direct review of the Judgment of Conviction (November 1, 2011) from the time that he sought "his first postconviction petition in state court on August 5, 2013," and accordingly, "the state postconviction

proceedings in this case had no tolling effect on the period applicable to this habeas filing." (*Id.* at 4-5.)  In other words, the one year allowed by the AEDPA, *see* 28 U.S.C. § 2244(d)(1) had already passed by the time Hodges first sought postconviction relief in state court, so there is no tolling under § 2244(d)(2).

Respondent also argues that § 2244(d)(1)(C), which provides that the one-year statute of limitations begins to run from "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review" (assuming it is the latest date), does not apply because neither *Molina-Martinez* nor *Rosales-Mireles* recognized a new constitutional right. (*Id.* at 4-5.)  Rather, according to Respondent, both "cases concerned defendants who were sentenced under miscalculated Federal Sentencing Guidelines ranges, and who then argued for relief under the plain-error test." (*Id.* at 4-5.)  Respondent also argues that *Molina-Martinez* and *Rosales-Mireles* are inapposite to Petitioner's claims because, unlike the defendants in those cases who were sentenced under federal sentencing guideline ranges that were higher than the applicable ones, Petitioner here "was sentenced under the correct state sentencing guidelines range." (*Id.* at 6-7.)  Finally, Respondent argues that even with the benefit of *Molina-Martinez* and *Rosales-Mireles*, the Petition is still untimely because Petitioner did not seek post-conviction relief in state court within a year after those cases were decided as required by § 2244(d)(1)(C). (*Id.* at 7-8.)

Second, as to the merits, Respondent argues that should the Court reach the merits of the "illegal-sentence claim," dismissal is still warranted because "the Minnesota state

courts' determination that his constitutional rights were not violated was reasonable" because it was not an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States and because the Minnesota Court of Appeals correctly concluded that Hodges "was sentenced based on his correct criminal-history score of four." (*Id.* at 8-9 (citing *Hodges*, 2020 WL 4932790, at *3).) Respondent also contends that the state courts' determination "was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" and that "Petitioner does not allege that either the district court or the court of appeals erred in any of their factual determinations." (*Id.* at 9.)

Lastly, Respondent argues that Petitioner's ineffective assistance of counsel claim should also be dismissed because, as found by the Minnesota state district court and court of appeals, it is procedurally defaulted because it is "*Knaffla*-barred in state court" and as a result, "federal habeas review of the claim is also barred 'unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," which Petitioner has not shown. (*Id.* at 10-11.)

Hodges, on the other hand, argues that because a habeas corpus claim is a civil proceeding, the Federal Rules of Civil Procedure apply to this proceeding and that the allegations made in the Petition "must be accepted as true and construed in petitioner's favor for the purposes of" the Motion to Dismiss. (Dkt. 12 at 8.) Hodges further argues that the state courts reached a conclusion that is contrary to clearly established federal law in holding he was not entitled to be resentenced because the state courts disregarded

the fact that his "pleas were entered based on an incorrect understanding of his criminal history score, and that when that error was discovered, nothing was done to determine" any potential weight it had on his plea agreement and "there is insufficient evidence in the record to determine whether his plea was valid." (*Id.* at 8-13.)

Hodges further argues that this case is substantially similar to *Molina-Martinez* and *Rosales-Mireles*, as well as a case decided by the Minnesota Court of Appeals—*State v. Provost*, 901 N.W.2d 199 (Minn. Ct. App. 2017). (*Id.*) As a result, Hodges contends that he is "entitled to the relief he seeks in the form of a correction of his sentence, or in the absence of that, he should be allowed to withdraw his plea." (*Id.* at 9.)

Hodges contends that the state courts reached a conclusion that is contrary to clearly established federal law in regard to his ineffective assistance of counsel claim. (*Id.* at 13-18.) Hodges maintains that his claims should be addressed on their merits because they are not time barred pursuant to § 2244(d)(1)(B), (C), or (D) because "he relies on recent United States Supreme Court caselaw regarding a defendant's right to be sentenced using a correct criminal history score." (*Id.* at 19.) To that effect, Hodges contends that *Molina-Martinez*, *Rosales-Mireles*, and *Provost* did not exist during his prior filings; the timing for bringing his Petition tolled based on his state court filings; and that he exercised due diligence in discovering the cases and bringing his claims. (*Id.* at 19-21.) According to Hodges, the "applicable question is not the date that the cases were decided, but rather, what date that information was discoverable by [him]." (*Id.* at 21.) Hodges further argues that in August 2016, "the state district court issued an Order stating that it would not accept any further motions or petitions to resentence based on

[the] sentence being illegal or unauthorized by law or outside the plea agreement"

("August 2016 Order"), which hindered him from bringing his Petition at an earlier time.

(*Id.* at 21.)  Hodges maintains that his claims are not procedurally defaulted because

Minnesota courts have established that challenges related to a defendant's criminal

history score cannot be procedurally barred under state law, and even if so, "the fact that

he was actually Court Ordered not to file any further petitions related to this conviction

creates cause and prejudice sufficient to overcome any procedural or time bar related to

these claims."  (*Id.* at 22-24.)  Hodges also asks the Court to consider his claims even if

they were not fairly presented to the Minnesota court because he has demonstrated cause

for any potential procedural default and on the basis of prejudice under the circumstances

of this case.  (*Id.* at 25.)

## II.    LEGAL STANDARD

A prisoner in state custody may seek relief in federal court by filing an application

for a writ of habeas corpus "only on the ground that he is in custody in violation of the

Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Habeas relief

under § 2254 is warranted in three circumstances: (1) when a state court decision was

contrary to clearly established federal law, (2) when a state court decision involved an

unreasonable application of clearly established federal law, or (3) when a state court

decision "was based on an unreasonable determination of the facts in light of the

evidence presented."  28 U.S.C. § 2254(d)(1), (2).  However, the application for a writ of

habeas corpus will only be granted if "the applicant has exhausted the remedies available

in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).

Under Minnesota law, "all claims raised in [a] direct appeal as well as 'all claims known but not raised' at the time of the direct appeal are barred from consideration in any subsequent petitions for post-conviction relief." *Cooper v. State*, 745 N.W.2d 188, 190-91 (Minn. 2008) (*quoting State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976)). The primary exceptions to the *Knaffla* rule are where a novel legal issue is presented, or the interests of fairness require relief. *Washington v. State*, 675 N.W.2d 628, 630 (Minn. 2004). The Eighth Circuit routinely declines review of claims that Minnesota courts find to be *Knaffla*-barred. *See e.g.*, *Murray v. Hvass*, 269 F.3d 896, 898-901 (8th Cir. 2001); *McCall v. Benson*, 114 F.3d 754, 757-58 (8th Cir. 1997).

As argued by Hodges, because this case comes before the Court on "a motion to dismiss, this Court considers that evidence under Rule 12(b)(6) of the Federal Rules of Civil Procedure, construing the unadjudicated facts in the light most favorable to [Petitioner] and drawing all reasonable inferences in his favor." *Rick v. Harpstead*, No. 19-CV-2827 (NEB/DTS), 2021 WL 4476471, at *3 (D. Minn. Sept. 30, 2021) (motion to dismiss on § 2254 petition).

## III.   ANALYSIS

As stated above, Ground One of the Petition concerns Hodges' claims that he should be allowed to withdraw his plea or be resentenced because his plea was based on an incorrect calculation of his criminal history points. (Dkt. 1 ¶ 13; Dkt. 12 at 8-13.) In his Petition, Hodges also asserts a second Ground on the basis that he was provided ineffective assistance of counsel because after it became known that his criminal history

points were 4 instead of 5 as previously believed, counsel did not advise Hodges about the impact of this change on the plea agreement previously negotiated.  (*Id.* ¶¶ 13-18.)

The Court first examines whether Hodges brought this Petition in a timely manner in accordance with § 2244(d).

## A.     Timeliness of the Claims

As previously stated, Respondent contends that the Petition was not timely filed, however, Hodges maintains that it was timely filed.  (Dkt. 11 at 4-7; Dkt. 12 at 19-25.) The relevant law, 28 U.S.C. § 2244(d), provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d).

Hodges pleaded guilty to a first-degree criminal sexual conduct charge in Ramsey County on April 25, 2011, and was sentenced by the Ramsey County District Court on

August 3, 2011 ("Judgment of Conviction").  (*See* Dkt. 1 ¶¶ 1, 2, 6; Dkt. 11-2 at 8, index #35.)  In Minnesota, "a defendant must seek direct review within 90 days of the entry of a criminal judgment."  *Whipple v. Johnson*, No. 15-4505 (JRT/JSM), 2016 WL 4154336, at *2 (D. Minn. Aug. 5, 2016) (citing Minn. R. Crim. P. 28.02, subd. 4(3)(a)).  Hodges therefore had ninety days, that is, by November 1, 2011 to either directly appeal the Judgment or seek certiorari review by the U.S. Supreme Court.  *See Henderson v. Bolin*, No. 20-cv-1523 (JRT/DTS), 2021 WL 1669106, at *2 (D. Minn. March 23, 2021) ("Because [petitioner] did not petition for U.S. Supreme Court review of his direct appeal, his judgment of conviction became final when the time for filing a certiorari petition expired"); *see also* Supreme Court Rule 13.1 (providing that a writ of certiorari for review of a state court judgment is timely when it is filed with the Clerk of the Supreme Court within ninety days after the entry of the judgment).  Hodges never directly appealed the Judgment of Conviction, nor did he petition the U.S. Supreme Court for writ of certiorari (Dkt. 1 ¶¶ 8-10), accordingly, he was required to file a federal habeas corpus petition within one year of the Judgment of Conviction being final by November 1, 2012, absent any tolling.  It was not until January 22, 2021 that Hodges filed the present federal habeas corpus petition with this Court—over eight years and two months beyond the required time.  (*See* Dkt. 1 ¶ 15 (Hodges checked "No" when asked whether he has previously filed "any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?").)

### 1.    Section 2244(d)(2)

Pursuant to § 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is **pending** shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). Hodges filed his first postconviction relief for the Judgment of Conviction on August 5, 2013, over nine months after the time period for him to file a federal habeas corpus petition expired. (Dkt. 1 ¶ 12[2]; Dkt. 11-2 at 8, index #22.) Because that filing was not made or pending before the time period for filing his federal habeas petition expired, Hodges cannot take advantage of § 2244(d)(2). *See Jackson v. Ault*, 452 F.3d 734, 735 (8th Cir. 2006) ("The one year AEDPA limit for federal habeas filing cannot be tolled after it has expired."); *see also Whipple*, 2016 WL 4154336, at *3 ("However, Whipple cannot take advantage of § 2244(d)(2)'s terms permitting a pause in his habeas limitations period because his habeas limitations period expired in 2007, well before he filed his first "application for State post-conviction or other collateral review" in 2012."); *Kotowski v. Roy*, No. 11-3219 (PAM/FLN), 2011 WL 7416386, at *5 (D. Minn. Dec. 14, 2011) ("[T]he tolling provisions of § 2244(d)(2) cannot aid Petitioner here, because the federal statute of limitations had already been running for more than a year before he filed his post-conviction motion in the trial court."). Hodges' habeas petition is therefore untimely.

---

[2]    Hodges filed the August 5, 2013 petition for postconviction relief in Ramsey County District Court. ((Dkt. 1-1 at 10; *Hodges*, 2020 WL 4932790, at *2.)

2.      **Section 2244(d)(1)(B), (C), and (D)**

Hodges argues that § 2244(d)(1)(B), (C), or (D) apply to him.  However, none of those provisions can save the untimeliness of his Petition.  As it relates to § 2244(d)(1)(C) and (D), Hodges contends that the *Molina-Martinez*, *Rosales-Mireles*, and *Provost* cases recognize "a new constitutional right" that applies to him and because he thereafter exercised due diligence in bringing his claims in state court, the timing for seeking habeas relief in federal court was tolled.  (Dkt. 12 at 19-21.)  Hodges, however, appears to misunderstand the propositions of those cases.

*Molina-Martinez* "involve[d] the Federal Sentencing Guidelines."  138 S. Ct. at 191.  The U.S. Supreme Court "granted certiorari . . . to determine whether the application of an incorrect Guidelines range at sentencing affected the defendant's substantial rights," *id.* at 198, in particular, the appellate courts' review under Federal Rule of Criminal Procedure 52(b) of an application of incorrect federal sentencing guidelines based on an inaccurate calculation of criminal history points in the presentencing report, *id.* at 194-98.  In *Rosales-Mireles*, the U.S. Supreme Court found that the Fifth Circuit abused its discretion in its application of Rule 52(b), namely, its application of *United States v. Olano*, 507 U.S. 725 (1993), when deciding against remanding for resentencing based on an error in the presentence report.  138 S. Ct. 1897, 1904-11 (2018).  In *Rosales-Mireles*, the double-counting of an earlier conviction resulted in an incorrect criminal history score and incorrect guidelines range of 77 to 96 months, where the correct range was 70 to 87 months, and he was sentenced to 78 months.  *Id.* at 1905.

14

Finally, in *Provost*, a defendant who was sentenced in Meeker County District Court based on an incorrect criminal history score had filed a motion to correct his sentence. *Provost*, 901 N.W.2d at 200-201. The "48-month sentence [] was within the presumptive guidelines range of 41 to 57 months when calculated with Provost's incorrect criminal history score, [and] was also within the presumptive guidelines range of 37 to 51 months when calculated with his corrected criminal history score." *Id.* at 201. The district court thought it lacked the authority to modify the sentence because it was "authorized" (because the sentence fell within the correct range). *See id.* On appeal, the Minnesota Court of Appeals reversed and remanded, finding that under Minnesota law, "any 'sentence based on an incorrect criminal history score is an illegal sentence' and is 'correctable at any time.'" *Id.* (quoting *State v. Maurstad*, 733 N.W.2d 141, 142 (Minn. 2007)); *see also* Minn. R. Crim P. 27.03, subd. 9. Citing *Molina-Martinez*, the Minnesota Court of Appeals noted that this issue had been "addressed by the United States Supreme Court in the context of the federal sentencing guidelines."[3] *Id.* at 202. Agreeing with *Molina-Martinez*, the Minnesota Court of Appeals held "when a defendant is sentenced based on an incorrect criminal history score, a district court must resentence the defendant." *Id.* (footnote omitted).

---

[3]     The Court notes that federal courts cannot issue a writ of habeas corpus based upon errors in state law—rather relief can only be provided where the state court's decision is contrary to, or involved an unreasonable application of, federal law or the U.S. Constitution. *See* 28 U.S.C. § 2254(d). As such, the Court only addresses *Provost* to the extent that it analyzes *Molina-Martinez*, and not because the decision itself automatically affords Petitioner with any relief under § 2254.

Hodges' reliance on these three cases for purposes of § 2244(d)(1)(C) fails.

First, numerous courts have recognized that *Molina-Martinez* and *Rosales-Mirales* did not recognize a new constitutional right that has been made retroactive to cases on collateral review.[4] *See, e.g.*, *Howard*, 2018 WL 11236506, at 3 ("*Martinez-Molina* [sic] did not announce a new rule of constitutional law."); *Davis v. United States*, 18-CV-8219 (JMF) (BCM), 13-CR-484 (JMF), 2021 WL 3501243, *9 (S.D.N.Y. July 12, 2021) ("As has been repeatedly recognized by the lower federal courts *Rosales-Mireles* 'did not identify a new right and make it retroactively available.' . . . Rather, *Rosales-Mireles* clarified the standard an appellate court must use in deciding whether to exercise discretion in correcting a plain error.") (collecting cases) (citations omitted); *Ezekiel v. Rickard*, No. CV 1:19-00120, 2021 WL 4343413, at *3 (S.D.W. Va. Jan. 26, 2021) ("Furthermore, it is well recognized that Supreme Court's decision in *Rosales-Mireles* did not recognize a new rule of constitutional law that has been made retroactive to cases on collateral review.") (collecting cases), *R. & R. adopted by*, No. CV 1:19-00120, 2021 WL 4342732 (S.D.W. Va. Sept. 23, 2021); *Phelps v. Andrews*, 2019 WL 6208537, *3 (E.D.N.C. Nov. 20, 2019) (finding that *Rosales-Mireles* and *Molina-Martinez* have "not been found to apply retroactively on collateral review"); *United States v. Twitty*, No. CR 0:98-826-CMC, 2018 WL 4506802, at *5 (D.S.C. Sept. 20, 2018) ("Defendant's request is untimely as neither *Molina-Martinez* nor *Rosales-Mireles* have been made retroactively

---

[4]    Some of these cases involve § 2255(f)(3), which has virtually identical language as § 2244(d)(1)(C). *See* 28 U.S.C. § 2255(f)(3) ("[T]he date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."

available to cases on collateral review."), *aff'd*, 763 F. App'x 318 (4th Cir. 2019). The Court does not understand Hodges to be relying on *Provost* with respect to the time bar (*see* Dkt. 12 at 19 ("he relies on recent United States Supreme Court caselaw regarding a defendant's right to be sentenced using a correct criminal history score")), but if he were, that reliance would be unavailing, as the question is the "date on which the constitutional right asserted was initially recognized by the Supreme Court," not the date on which the right was initially recognized by a state court of appeals.

In addition, although the Court need not reach the issue, while Hodges argues his situation is "very similar to that of Molina-Martinez's and Provost's" (Dkt. 12 at 13), the cases are very different in meaningful respects. First and foremost, *Molina-Martinez* and *Rosales-Mireles* both deal with Rule 52(b) of the Federal Rules of Criminal Procedure and federal defendants sentenced under incorrect Federal Sentencing Guidelines ranges. Hodges has not argued, nor has he shown that the Federal Sentencing Guidelines or Rule 52 apply to a state prisoner's challenge of his state sentence. *See Howard v. Secretary, Dep't of Corrs.*, No. 6:17-cv-157-Orl-22GJK, 2018 WL 11236506, at *3 (M.D. Fla. June 18, 2018) ("Nothing in *Martinez-Molina* [sic] is applicable to state prisoners challenging their state sentences.") (citation omitted). Nevertheless, Hodges argues that because his plea was based on an incorrect criminal history points calculation, the resulting sentence—even if based on the correct criminal history points—therefore requires resentencing or withdrawal of his plea. (*See* Dkt. 12 at 12-13.) Hodges attempts to draw similarities between this case and *Molina-Martinez*, *Rosales-Mireles*, and *Provost* on the basis that those cases all generally discuss sentencing guidelines and criminal history

points. However, none of those three cases discuss plea agreements or stand for the proposition that a defendant should be re-sentenced when the defendant enters into a plea agreement based on incorrect criminal history points but was ultimately sentenced using his accurate criminal history points. In fact, each of the cases emphasize that re-sentencing a defendant is necessary when the defendant was **sentenced** based on incorrect criminal history points regardless of whether the sentence fell within the correct guidelines. That did not happen here.

While all parties involved were under the impression that the applicable criminal history points was 5 when negotiating and agreeing to the plea, the correct criminal history points of 4 was thereafter included in the presentence investigation report that was reviewed by the state district court prior to sentencing. (*See* Dkt. 1-1 at 9, *Hodges*, 2020 WL 4932790, at *1.) As the Minnesota Court of Appeals explained when affirming the denial of Hodges' petition for postconviction relief:

> On August 3, 2011, Hodges appeared in Ramsey County for sentencing. The district court asked if there were any corrections that needed to be made to the presentence investigation report (PSI) and informed the parties that it had also reviewed the addendum to the PSI. The PSI that the Ramsey County District Court reviewed before sentencing Hodges revealed that he had a criminal-history score of four.

(Dkt. 1-1 at 9, *Hodges*, 2020 WL 4932790, at *1.) This does not appear to be disputed, but if there were any doubt, Hodges' counsel confirmed at sentencing that the sentence of 281 months was the "top of the box" for a criminal history of 4. (Dkt. 1-1 at 9-10, *Hodges*, 2020 WL 4932790, at *1.)

Unlike *Molina-Martinez*, there is no indication that the incorrect criminal history score of 5 was used to calculate the sentence. As the Minnesota Court of Appeals explained,

> the state noted for the court that it had "double or triple checked on the custody status point with Corrections," and that there was not a "custody status point, as we had hoped at the time of the plea." The state explained that the parties "agreed that we would be arguing within a range of 260 to 306 months," and with the corrected criminal-history score "the top of the box for this offense is 281 months, which is within the range that we anticipated." The state recommended that the district court sentence Hodges to 281 months in prison, which was a top-of-the-box sentence. The state argued this was appropriate because of "the nature of the [victim's] injuries," the particular cruelty with which Hodges treated the victim, and because Hodges continued to deny responsibility for the offense.

(Dkt. 1-1 at 9; *Hodges*, 2020 WL 4932790, at *1 (quotations omitted)). Again, Hodges does not seem to dispute that his sentence was based on the correct criminal history score; he instead is adamant that the plea deal was negotiated based on an incorrect criminal history score of 5, thereby affecting the sentencing guidelines range. (*See* Dkt. 12 at 8-9, 13 (contending that the state courts disregarded the fact that his "pleas were entered based on an incorrect understanding of his criminal history score" and "there is insufficient evidence in the record to determine whether his plea was valid")). The problem with this argument is that neither *Molina-Martinez* nor *Rosales-Mireles* addressed whether a plea was valid if it was based on an incorrect criminal history score. To the extent those cases announced a new right, the right they announced does not apply to Hodges.

In sum, § 2244(d)(1)(C) does not aid Hodges, because neither *Molina-Martinez* nor *Rosales-Mireles* establish a newly recognized constitutional right where the right was

initially recognized by the Supreme Court in those cases and the right has been made

retroactively applicable to cases on collateral review.  Further, the rights they create

based on the federal Sentencing Guidelines and Rule 52(b) are not rights that apply to

Hodges, who pleaded guilty in state court and was sentenced pursuant to Minnesota

Sentencing Guidelines.

Hodges' arguments pursuant to § 2244(d)(1)(B) and (D) require the Court to

conclude that *Molina-Martinez* or *Rosales-Mireles* are cases where the "constitutional

right asserted was initially recognized by the Supreme Court, if the right has been newly

recognized by the Supreme Court and made retroactively applicable to cases on collateral

review," entitling him to relief under § 2244(d)(1)(C).  (*See* Dkt. 12 at 20-21 ("Since that

time, the United States Supreme Court, as well as the Minnesota Court of Appeals, have

recognized that this was not proper, and that resentencing is necessary where the wrong

criminal history score was used, even if the sentence fits within the range for the correct

criminal history score.  When Mr. Hodges was able to discover those cases, which were

decided in 2016, 2017, and 2018, he acted diligently in seeking representation and

bringing his claims before the state courts to have them addressed."); *see also id.* at 21

("The applicable question is not the date that the cases were decided, but rather,

what date that information was discoverable by Mr. Hodges.  *Easterwood v. Champion*,

213 F.3d 1321, 1323 ( 10th Cir. 2000).  In this case, Mr. Hodges discovered the case law

related to his claims in late 2018 and then sought representation and filed a petition in the

state courts as soon as was possible.").)  Having found *Molina-Martinez* and *Rosales-Mireles* afford Hodges no relief under § 2244(d)(1)(C), the Court need not reach Hodges' arguments regarding diligence and impediments.

**B.    Ineffective Assistance of Counsel**

In his first postconviction relief motion of August 5, 2013, Hodges argued that: (1) he should be able to withdraw his guilty plea because he was not mentally sound at the time of his plea; (2) his plea was not intelligent because he was misinformed of the risks he faced by proceeding to trial; and (3) his sentence should be reduced because it was based on the court's review of the non-record photographs of his victim.  (Dkt. 1 ¶¶ 11-12.)  At no time did he argue that he received ineffective assistance of counsel until he sought postconviction relief in August 2019.  (*Id.* at 2-6.)  In October 2019, the district court found Hodges' claims were *Knaffla*-barred and time-barred.  (Dkt. 1-1 at 4-5.)  The Minnesota Court of Appeals affirmed the district court's ruling in August 2020,[5] noting that because Hodges did not directly appeal his judgment, his first opportunity to raise an ineffective assistance of counsel claim relative to his trial counsel was in his first postconviction petition and appeal, and although, it was not entirely clear that Hodges was asserting an ineffective assistance of counsel claim as to his appellate counsel, to the extent that he was, his first opportunity to do so was in his second postconviction petition.  (*Id.* at 14-17; *Hodges*, 2020 WL 4932790, at *4.)  However, "Hodges failed to raise the claim until his sixth postconviction petition.  At this point, his claim is

---

[5]    The Minnesota Supreme Court denied Hodges' petition for review of this decision. (Dkt. 11-2 at 3, index ## 142-45.)

procedurally barred.  He knew or should have known that these claims existed and failed to raise them at an earlier point.  Therefore, these claims are *Knaffla* barred."  (*Id.*)  The court found that the two exceptions to the *Knaffla* rule were not applicable because: (1) "an ineffective assistance of counsel claim is not a novel legal claim;" and (2) the cases Hodges relied on related to the substantive merit of his petition, and for "the interests-of-justice exception to apply, 'the claim must relate to an injustice that delayed the filing of the petition, not to the substantive merit of the petition."  (*Id.* (quoting *Schleicher v. State*, 718 N.W.2d 440, 447-48 (Minn. 2006), and *Hooper v. State*, 838 N.W.2d 775, 787 (Minn. 2013)).)

The U.S. Supreme Court has made clear that "a federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule."  *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citations and footnotes omitted); *see also, e.g.*, *Barnett v. Roper*, 904 F.3d 623, 629 (8th Cir. 2018) (quoting *Davila*, 137 S. Ct. at 2052). In this case, the Minnesota courts applied just such a rule to Hodges' claims when he raised them in his postconviction-review petition.  The *Knaffla* rule has repeatedly been determined to be the sort of adequate/independent state procedural rule that can trigger procedural default.  *See, e.g.*, *Murphy v. King*, 652 F.3d 845, 849 (8th Cir. 2011); *Riddle v. Minnesota*, No. 20-CV-1262 (ECT/ECW), 2021 WL 799490, at *9 (D. Minn. Jan. 8, 2021) (quoting *Murray v. Hvass*, 269 F.3d 896, 899-900 (8th Cir. 2001)), *R.&R. adopted*, 2021 WL 795164 (D. Minn. Mar. 2, 2021).

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also, e.g.*, *House v. Bell*, 547 U.S. 518, 536 (2006) (quoting cases); *Stephen v. Smith*, 963 F.3d 795, 799 (8th Cir. 2020) (quoting *Skillicorn v. Luebbers*, 475 F.3d 965, 976-77 (8th Cir. 2007).

Hodges asserts that cause is present here because "the cases that [he] relies upon that show that he should have been resentenced did not exist at the time of his initial appeal," as well as due to the August 2016 Order.  (Dkt. 12 at 24.)  As to prejudice, Hodges argues that the three cases he cited to, that is *Molina-Martinez*, *Rosales-Mireles*, and *Provost*, support his claim that he "suffered prejudice when he was sentenced based on a plea entered on the basis of an incorrect criminal history score."  (*Id.*)  Hodges' arguments are essentially the same as those asserted for the "timeliness" issue.  Because the Court has discussed its findings at length above, it will not rehash them here.  Further, this argument plainly ignores the nature of Hodges' ineffective assistance of counsel claim, which only pertains to the alleged failure of his counsel to properly explain or act on the mistake made as to his criminal history points.  (*See id.* at 17 ("Instead, the matter proceeded straight to sentencing even though, for all but about 5 minutes of the time since he had entered his plea, Mr. Hodges believed he had negotiated a deal for the bottom to the middle of the box for his criminal history score, instead of the top 2/3 of the

box for his criminal history sentence that he actually received.  There is literally nothing in the record to suggest that Mr. Hodges was provided any information about how this change would impact him, or given any choice on how to proceed").)  This argument could have been raised on direct appeal.  Accordingly, based on the above, Hodges' claims are procedurally defaulted.

In sum, Hodges did not fairly present his ineffective assistance of counsel claim to the Minnesota Supreme Court, and he cannot now present those claims to any Minnesota court pursuant to the rule in *Knaffla*.  *See Murphy*, 652 F.3d at 848-51 (holding that a habeas petitioner was procedurally barred from raising a claim that he had failed to fairly present to the Minnesota Supreme Court).  The Court therefore recommends the Petition be denied in its entirety and dismissal of this action.

## IV.    CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a certificate of appealability ("COA").  *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing in this context, Hodges must show "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  This Court concludes that it is unlikely any other court, including the Eighth Circuit, would reach a conclusion contrary to that reached above.  Accordingly, it is recommended that a COA not be issued in this matter.

## V.   RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS RECOMMENDED THAT**:

1. The Petition (Dkt. 1) be **DENIED** and that this action be **DISMISSED WITH PREJUDICE.**

2. Respondent's Motion to Dismiss (Dkt. 10) be **GRANTED.**

3. No certificate of appealability be issued.

Dated: January 31, 2022                    *s/ Elizabeth Cowan Wright*
                                           ELIZABETH COWAN WRIGHT
                                           United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).